All right, this is a case that involved the issue of claim construction. Now the first issue in this particular claim construction issue relates to claim construction of Claim 1. Claim 1 has a preamble and the preamble includes the language, quote, vending machine for vending telecommunications channel access. But let me just ask you one thing preliminarily. I mean, am I right in thinking that if we rule in favor of T-Mobile on the first case, that eliminates this case? Yeah, I think if we don't have priority, we're dead basically. We have to show, they have an anticipatory reference, the mobile star, and we've agreed, we didn't know about that actually when we filed a case, but we have found, we believe that we anticipate that as to every asserted claim. Does this require priority? Yeah, we require priority. Okay, we actually made a showing. He actually, Judge Barbadaro didn't actually address anything other than Claim 1. He thought he could knock the whole thing out by Claim 1. But then we could, we have other issues down the road, maybe on the independent claim. I just wanted to confirm. Okay, so assuming we survive, then we move on to this one. This has to do with claim constructions. I mean, the claim is a valid claim. And the first issue is, is the preamble limiting? And here the preamble is a statement of the intended purpose of the invention. The invention consists of the components that are set forth in the individual elements, which we've labeled 1A through 1F, an interface, a payment mechanism, control unit, all those various parts. Counsel, we so far, I scoured our precedent and was unable to find, because this issue does trouble me, but I was unable to find any case in which there was a reliance for antecedent basis on something in the preamble. I haven't found any case in which we didn't ultimately conclude then that the preamble was in fact a limitation. Are you aware of any? Can you point me to anything that doesn't really make this a black letter rule? I'm a fan of black letter rules, Mike. I don't think we have all that many of them here. I don't remember reaching that conclusion, but I don't remember, if I saw some other cases contrary to what you just said, I don't remember what they are. Maybe we can search what Mr. Lee is arguing and see. I'll let you know if I can think of it. But in any event, Judge from this point of common sense, if you called it apparatus instead of vending machine, apparatus for vending telecommunications channel access, it would be the same difference. And if you had an antecedent reference in a claim to said apparatus, you're just referring to the name. Just referring back to a name is not importing structure unless the antecedent basis that makes sense, if there's some structure that's articulated in the preamble that's not included in the specific claim elements and it has to be in there to make the thing make sense. That's, I understand, what the basic rule is. Here there's no structure that's necessary for the invention to make sense. The invention makes total sense is understandable just by looking at A1 through F. If it just said invention comprising colon, it would have been okay. That tells you everything you know about how this apparatus works. So we think that she was wrong in importing, and we really think Judge Barbdor was correct. There is no, there's nothing in a specification that says this is extra structure. This vending machine we define as extra structure that has to be part of the invention. But that wasn't the only distinction that she drew. She goes into, once she decides that vending machine is a limitation, then she says, I construe a vending machine to be a unitary, like a box, like a Coke machine essentially, a unitary structure. Everything has to be in it, connected together. The payment mechanism has to be part of this structure. Only one person can use it at a time. And what she did when she did that, she imported, she limited the claims in accordance with one specific embodiment. But there are other embodiments clearly articulated in the patents in suit which she's excluding. So those are two mistakes on her part. There's absolutely, and their expert witness actually agreed with me when I took his deposition. There's nothing in this patent in which the inventors state that everything has to be in one unitary structure, and only one person at a time can use it. And when she came to that conclusion, that mental construct, then she had to adopt constructions of each of the elements to fit within that construct, which completely is inconsistent what the inventors state. I mean, she just disregards what the specification says, which is like claim construction 101, you're not supposed to do that. She makes, she paid, the inventors clearly had the idea, for example, we quote some of these on page 10 of our brief, that one control unit could operate multiple vending machines. In other words, one piece of people could use this service, or whatever you want to call it, at the same time, using one control unit. That's exactly what Wayport's acute system does. They said it may be more cost-effective to have one control unit operating multiple vending machines. That's right in the specification. Her construction completely excludes that. That means that's an embodiment that we expressed that she is disregarding, and it's inconsistent with her claim construction. She also says that almost any combination of functional, I'm sorry, they almost said in their, in their, they said in their specification, the inventors, that almost any combination of functional components of the vending machine could be moved to a location remote from the vending machine. Now, I agree that the language remote from the vending machine is a bit awkward, it's not particularly artfully stated, but I think it's clear what the inventors were saying. This could be a distributed system. If it's a distributed system, it's not everything in one box, which is the way she construed it. She just disregarded that embodiment, and it's, it's, it's just not correct to do that under, you know, standard claim construction law. They also said in their specification that no physical payment method need be included in the vending machine. That, and that you could use, for example, other forms of payment had to be made. There had to be a mechanism for payment, but it could be through the laptop. They disclosed lots of different, they went out of their way to disclose many different types of payment approaches. It could be through biometrics, it could, it should be through e-money on your laptop, it could be through credit cards, as well as coins or something like that. And she said that, that must mean that we intended a vending machine with no payment mechanism, because it's not in the box, and she had already tied herself into the concept that it all had to be in one box. So she went down the wrong road once we got this mental construct of everything being in one location, usable by, like a Coke machine. Once she had that in her mind, then all these limitations had to be defined in a way that made sense, and they turned out to be wrong, because they exclude what the patent, what clearly was invented here, what the intenders, what the inventors intended to cover. They also say that alternatively the user interface can be present inside or uploaded to the user's laptop. That's in the specification, and under her view, that's not within the scope of the invention. Now that would mean a vending machine with, with no user interface, but that's, that's a crazy, sorry, that's the interpretation that doesn't make any sense from the point of view of what the inventors must have been thinking about. And also, it excludes, they argue that, well, these are disclosed but unclaimed embodiments, but if you look at the dependent claims that we're inserting in this case, each one of those is in fact a dependent claim, so that her construction has got to be wrong. She excludes, she's adopted a construction which excludes embodiments that are expressly claimed, and all I can say is that it seems to me that there just can't be no dispute that she came up with a construction that was too narrow. She imported a specific limitation, a specific embodiment into Claim 1 and excluded everything else. So that's pretty much our, our statement as to claim construction, and we can go into more detail relating to each one of these. The, it's interesting, if you take a look at the deposition of their expert witness, he essentially agreed when I asked him that the inventors could well have understood this concept of a vending machine figuratively and used it to describe a distributed system, and that a distributed system makes sense from an engineering perspective, and there was nothing in the patent or specification that told him, the claims or specification, that told him that that's not what they were intending. So I think that Mr. Cooley's admissions are helpful to us on that subject. And there was a lot of non-infringement against us on the basis of this very unduly restrictive claim construction, and that was clearly incorrect. Looking at it the other way, if the claims were correctly construed, there's really no genuine issue as to how their system works. It's all set forth, but there's no dispute between the parties. It's set forth in their respective statements of fact, and as to literal infringement, if the claims are correctly construed, Power Oasis should be entitled to summary judgment. So I think that's basically what I want to say on this. I'll be glad to reserve the rest of my time. All right, we'll save your time for rebuttal, and let's hear from Mr. Lee on this case. May I proceed, Your Honor? Yes, please. What the court has just heard is actually, essentially, a replay of what occurred in the two district courts, whose records are now before you. What happened in this case is this. The first filed case, as the court knows, was filed in Massachusetts. There was a claim, there was a preliminary injunction that was brought. We offered a narrow claim interpretation. The judge denied the preliminary injunction in an order in which she indicated that, without reaching the claim construction issue specifically, entirely, she indicated that she thought that we were right, and there was not a likelihood of success in the merits. Then, the next filed case is filed in New Hampshire before a different judge, and the argument made to Judge Barbadaro is precisely what you've heard today. And I think it puts the point on Judge Shaw's question about what happens in the first appeal. Every single claim that Mr. Rippert just referred you to, every single portion of the specification that he just referred you to, to urge the broader claim interpretation, was added in June 2000. By my notes, and they may be incorrect, the only thing that he referred you to that was in the original specification was figure four, and I think figure four actually makes our point. When the court considers figure four, there is a label for item 300, and the text of the specification says, this is the vending machine. Where the real difference between the two judges occurred, candidly, is here. The concept of disclosed but unclaimed subject matter, while familiar to this court, familiar to the patent office, is not so familiar to many district court judges, and we spent, in both circumstances, some time discussing it. Judge Barbadaro says, in footnote six of his opinion, that this is really the key issue. I thought your argument was not that it was disclosed and unclaimed, but that it was not disclosed. No, as to the June 2000 material, Your Honor, I'm sorry, I was unclear. As to the June 2000 material, our argument is disclosed but not claimed, and Judge Zobel actually got this right. If you look at the claim, which has vending machine in the antecedent basis, and everybody agreed that vending machine has meaning to those of skill in the art. If there was a doubt about whether it had meaning, if the court considers the background of the invention, every single one of the disclosed embodiments of the prior art is a vending machine, some were parking meters, in the same sense that you would classically consider it to be a vending machine. So the way Judge Zobel analyzed it was, I see the term vending machine. It forms the antecedent basis for what's in the body of the claim. I also have both parties agreeing that there is meaning to the concept vending machine other than some apparatus, and it's in every claim, and it's in the specification 80 times. I'm going to give it meaning, and that's what she did, and I think that's what Phillips requires. Well counsel, why can't the meaning include in column 4 lines 28 through 38 the fact that one control unit can operate multiple machines, giving multiple customers access to the vending machine at the same time. It doesn't say giving multiple customers access to multiple vending machines at the same time. It says giving multiple customers access to the vending machine at the same time. So I don't know of a Coke machine in which multiple customers could get their Coke simultaneously, so I just don't think the traditional notion of vending machine, as in distributing, you know, Twinkies or soda, could possibly encapsulate this disclosure. I think the portion you're referring to is a column 4, right? Line 25, correct? No, a little further down. Yes, well if I could ask your honor to start at line 25. This is the problem when people are adding new matter to patents late in the day to pick up other technology. The portion you read talking about multiple customers accessing a vending machine is immediately preceded by a case that talks about one control unit operating multiple vending machines. So what's happened in June 2000 is figures 10 and 11 are added. These are those kiosk embodiments, and then they add language that quite honestly is almost internally inconsistent. And now two points, your honor. First, this is all June 2000 material, so this goes back to the box I was talking about, taking it at its face. And I read it and I noticed just what your honor did, which is there's a singular reference to vending machine, right? But it's immediately preceded by talking about a single control unit operating multiple vending machines. And so what I would ask the court to do is to consider that in light then of what claim 1, from which all the claims are dependent, says. And then I think you'll see, your honor, that it is in fact disclosed but unclaimed subject matter. Because claim 1 talks about a vending machine for vending telecommunications channel access to a customer, said vending machine comprising. And then there are six elements. And in those six elements, the vending machine tried an antecedent basis. And in fact, your honor, in a preamble, refers to a customer. And in the body, the claim refers to the customer. Another way the patent claims are drafted to provide an antecedent basis. So this is why we suggest, we suggested to Judge O'Bell and we would suggest to this court, this is, if we focus on what was disclosed in June 2007, this is in fact disclosed but unclaimed subject matter. And the different portions that Mr. Ripper described to you, if I take, your honor, again the customer interface that he said could be located remotely from the vending machine, here's what Judge O'Bell was struggling with. I have a claim that says I have a vending machine that has six parts. I have a portion of the specification that says as to actually two or three of them, you could have them Everybody agrees that that was at least inartfully done. And in fact, in claim 38, Judge Barbadaro came right out and said, this makes no sense. How can you have element A that's part of apparatus X and have a dependent claim that says, and by the way, element A can be located remotely from element X, which has to happen. And so there's a lot of new matter that's that. But as the court walks through it, what you will find is it's impossible to reconcile with claim one, from which all the claims are dependent. And this is a situation we would suggest in which the vending machine provides antecedent basis, and your honor, it provides some structure. It may not be a coin-operated machine as when we were discussing this, getting ready for the argument today, there's not all coin-operated today. Inflation that had made them gotten a support would have to accept dollars rather than just coins. Some of them accept electronic payment today. But there is an idea of a machine and apparatus, and that's in fact what is disclosed consistently, entirely consistently throughout this disclosure. Two more points. Not all of the claim interpretation issues completely depend upon her interpretation of vending machine in the preamble and her construction of it. She construed vending transaction, again, in a way that's very consistent with what's disclosed in the patent. And she determined that that is not present in the Wayport system. That is an independent basis, and it's an important independent basis, because what Paroasis has argued to you is that they can see that that claim limitation, vending transaction, is not literally present. They say that it's present equivalently, but as the court knows, Judge Zobel barred any claim of equivalence. And here's the reason why. Expert reports were due in November of 2005, and Mr. Morley submitted one, the same Mr. Morley we discussed earlier today. In January of 2006, he was deposed. And as the court knows from our brief, not only did he not have an opinion on the doctrine of equivalence, he had never heard of it. He said, I haven't heard of it. I don't know what it is. I don't intend to offer any opinion at trial. Eight months later, after we filed for summary judgment addressing his literal infringement claims, his second declaration is filed for the first time, and the judge excluded it. She was well within her discretion in doing that, particularly given how late in the day it came. With that excluded, two important things occur. First, there can be no DOE claim as to any of the limitations. And secondly, as to vending transaction, they only have a claim of equivalence. And therefore, if that's barred, the finding of non-infringement stands. This is a case where these are cases in which, if Power Oasis' broad claim interpretation is credited, the court has heard here itself today just what Judge Barbara Darrow heard, the justification for that is all new matter. June 2000, the patent would be invalid. If the defendants, which we advocated twice, narrower interpretation, which we believe is consistent with the specification, and giving close attention to what is disclosed and unclaimed subject matter is credited, then the patent's not infringed in this case, or as Judge Barbara Darrow said in footnote six in the other. Thank you. Thank you, Mr. Lee. Mr. Rippey. Thank you, Your Honor. The assertion that he made that we don't assert infringement of the vending transaction limitation, literally, is not correct. We were basically arguing that even under her construction, we should still get summary judgment. We cross-moved for summary judgment based on her construction, at the same time disputing that that construction was correct. We said, okay, there's your construction. Even though your construction, we were entitled to prevail. Now, under the correct, as she adopted incorrect construction of vending machine by limiting it to one specific embodiment, while the patent holders, the inventors, made it clear that there were a wide variety of different type of payment options available. And so that she adopted an incorrectly narrow construction of vending transaction, and that was the construction under which we had to say that infringement occurred under the doctrine of equivalence. And we put in an affidavit to that effect from Mr. Morley. It was equivalent, substantially the same. But once this court correctly construes the vending transaction limitation, we don't need to show infringement by means of the doctrine of equivalence. There will be literal infringement, because that's how the wayport system, the wayport system does provide a vending transaction, and it's clearly within the proper construction of that term. The issue as to claim one and this disclosed but unclaimed argument, which I have to confess I'm having a lot of trouble understanding, there's nothing in claim one that says that those specific elements of claim one, like the control unit, can't be shared between users at the same time. It doesn't say that. And so they're again trying to read a limitation in from this Coke machine type application that's just not there. And we have a specific claim that one control unit can operate, that's claim 40, can operate multiple vending machines. That's got to be within the scope of claim one because it's a dependent claim. And so to argue that claim one by its terms has to be limited and the parts can't be shared and therefore these are unclaimed embodiments, I just don't understand. That doesn't make any sense as far as I can understand the argument. It's here we have specific claims, each of the embodiments that they say that are outside the scope of her very narrow construction are covered by a specific dependent claim. So they are claimed. I don't see how they can argue with a straight face that they're not claimed. And as to the issue of priority, this particular appeal, the one related to Judge Jovell's opinion, is not related to priority. We obviously have the burden of showing priority as to every element of the claims that we are asserting as to infringement. We believe we can do that, but that's not an issue in this particular appeal. Thank you. Thank you, Mr. Effort. Thank you, Mr. Lee. Both cases are taken under submission.